# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

HEALTH KING ENTERPRISE, INC., )
an Illinois corporation; XINGWU LIU, )
an individual; and JOANNE LIU f/k/a )
LINGJUAN LIU, an individual, )
)
    Plaintiffs, )
)
    v. )
)
DALIAN HEALTH KING PRODUCTS )
CO., LTD., a Chinese Limited Company; )
HEALTH KING USA, INC., a California )
Corporation; and LIWEN SU, an )
individual, )
)
    Defendants. )
)
———————————————————— )   19 C 1878
)
DALIAN HEALTH KING PRODUCTS )   Judge John Z. Lee
CO., LTD., a Chinese Limited Company; )
HEALTH KING USA, INC., a California )
Corporation, )
)
)
    Counterclaim-Plaintiffs, )
)
    v. )
)
HEALTH KING ENTERPRISE, INC. )
d/b/a Balanceuticals, Inc., an Illinois )
corporation; XINGWU LIU, an )
individual; JOANNE LIU f/k/a )
LINGJUAN LIU, an individual; )
BRAVO TEAS & HERBS, INC., a )
Nevada corporation; and JAMES LIU, )
an individual, )
)
    Counterclaim-Defendants. )

## MEMORANDUM OPINION AND ORDER

Dalian Health King Products Co., Ltd. ("Dalian") and Health King USA Inc. have countersued Health King Enterprise ("Enterprise"), Xingwu Liu, Joanne Liu, Bravo Teas & Herbs, Inc. and James Liu for, among other things, breach of contract and for a declaration that Dalian owns all copyrights in the English translations of its product descriptions. The Counterclaim-Defendants have moved to dismiss the breach of contract claim (Count IV) and the declaratory judgment claim (Count XII). For the reasons below, the motion is denied.

## I.     Factual Background[1]

Dalian makes Chinese herbal teas and supplements for sale in China and the United States. Am. Countercls. ¶ 17, ECF No. 47. Beginning in 1994, Dalian created descriptions in Chinese to be included on its products. *Id.* ¶ 25.

The following year, Dalian began working with Defendant Xingwu Liu and his wife, Defendant Joanne Liu, to establish a company to distribute Dalian products in the United States. *Id.* ¶ 21. To that end, the Lius founded Enterprise in 1995. *Id.* ¶ 21.

Over the course of their business relationship, Dalian provided Enterprise with descriptions of Dalian's products in Chinese, and Enterprise agreed to translate the descriptions into English for use on the packaging of Dalian's products sold in the

---

[1]     On a motion to dismiss, the court "accept[s] as true all well-pleaded factual allegations and draw all reasonable inferences in favor of the plaintiff." *Heredia v. Capital Mgmt. Servs., L.P.*, 942 F.3d 811, 814 (7th Cir. 2019); *see Firestone Fin. Corp. v. Meyer*, 796 F.3d 822, 826, (7th Cir. 2015) (applying this standard to a motion to dismiss a counterclaim).

United States. *Id.* ¶ 23. Furthermore, the parties agreed that Dalian would retain all rights to any intellectual property in the original and translated product descriptions. *Id.*

Dalian and Enterprise entered into written distribution agreements in 1999 and 2002. Memorializing the prior arrangement between the parties, these agreements stated: "The relationship between [Dalian] and [Enterprise] is business/trade, [Enterprise] previously translated English labels for [Dalian], there exist no intellectual property problems." *Id.* ¶¶ 30, 35 (translated from Chinese). The parties renewed the term of the 2002 distribution agreement in 2010, and Dalian allowed the contract to expire in October 2018. *Id.* ¶¶ 37, 42, 67.

After the contract expired, Dalian discovered that the Lius and Enterprise had applied for copyrights in the English product descriptions in 1999, 2001, and 2018. *Id.* ¶¶ 27–28, 31–33, 70–71; *id.*, Ex. A, 1999 Agreement ¶ 7, ECF No. 47-1; *id.*, Ex. B, 2002 Agreement ¶ 9, ECF No. 47-2. According to Dalian, the Lius committed fraud when they told the United States Copyright Office that they were the sole authors of the English product descriptions; that the descriptions were original, rather than derivative; and that the descriptions were not works for hire. Am. Countercls. ¶¶ 28, 33, 71.

Count IV of the counterclaims alleges that this conduct violated the 1999 distribution agreement. Relatedly, Count XII seeks a declaratory judgment stating that it is Dalian that owns the copyright in the English product descriptions that are the subject of the Luis' 1999, 2001, and 2018 copyright registrations.

## II.    Legal Standard

To survive a motion to dismiss pursuant to Rule 12(b)(6), a counterclaim must "state a claim to relief that is plausible on its face." *Firestone*, 796 F.3d at 826 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

In reviewing a counterclaim, a court "accept[s] all well-pleaded facts in the complaint as true." *Firestone*, 796 F.3d at 826. At the same time, legal conclusions are ordinarily "not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. For that reason, "[t]hreadbare recitals of the elements of the cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678.

## III.    Analysis

### A.    Breach of the 1999 Distribution Agreement (Count IV)

Counterclaim-Defendants argue that Count IV must be dismissed because the 1999 Agreement does not prohibit Enterprise or the Lius from registering copyrights for the English translations.

"Under Illinois law, a plaintiff looking to state a colorable breach of contract claim must allege four elements: (1) the existence of a valid and enforceable contract; (2) substantial performance by the plaintiff; (3) a breach by the defendant; and (4) resultant damages." *Sevugan v. Direct Energy Servs., LLC*, 931 F.3d 610, 614 (7th Cir. 2019) (internal quotation marks omitted). "The primary objective in construing

a contract is to give effect to the intent of the parties." *Gallagher v. Lenart*, 874 N.E.2d 43, 58 (Ill. 2007).

Unfortunately, the 1999 Distribution Agreement is not a model of clarity. It states, in relevant part: "The relationship between [Dalian] and [Enterprise] is business/trade, [Enterprise] previously translated English labels for [Dalian], there exist no intellectual property problems." Am. Countercls. ¶ 30.

As the Counterclaim-Defendants read it, this language simply means that the parties agreed there were no active disputes as to who owned the copyrights to the English translations, and nothing that prohibited them from applying for the copyrights. In response, the Counterclaim-Plaintiffs contend that the parties' inclusion of the statement "[Enterprise] previously translated English labels for [Dalian]" before the statement "there exist no intellectual property problems" means the parties agreed that it was Dalian that owned the copyright to the translations, and Enterprise would not challenge Dalian's ownership.

"If the language of the contract is susceptible to more than one meaning, it is ambiguous." *Id.* Where "a contract is ambiguous, parol evidence is admitted to determine the parties' intent, and the interpretation of the language becomes a question of fact that the court cannot properly determine on a motion to dismiss." *Bank of Am., N.A. v. Oberman, Tivoli & Pickert, Inc.*, 12 F. Supp. 3d 1092, 1100 (N.D.

Ill. 2014); *see Quake Constr., Inc. v. Am. Airlines, Inc.*, 565 N.E.2d 990, 994 (Ill. 1990)).[2]

The language "[Enterprise] previously translated English labels for [Dalian], there exist no intellectual property problems" can be read in more than one way. One interpretation is that Dalian asked Enterprise to translate the labels and that Dalian's ownership of the copyrights would not be disputed by Enterprise. Another plausible reading is that Enterprise owned the copyrights and that Enterprise's ownership would not be disputed. Because the contract language is susceptible to more than one meaning, the Court concludes that it is ambiguous.

From this, it follows that parol evidence will be necessary to construe the contract and determine the intent of the parties. Accordingly, the parties will need to proceed to discovery, and the motion to dismiss Count IV is denied.

## B. Declaratory Judgment (Count XII)

The Counterclaim-Defendants also move to dismiss Count XII to the extent that it seeks a declaration that Dalian owns the copyright to the English translations as works for hire. In support, they repeat their mantra that the above-described contract language does not constitute an express, written agreement that the copyrights are owned by Dalian. *See* Counter-Defs.' Mot. Dismiss at 7 (citing 17

---

[2] The Counter-Defendants assert in their reply brief that Dalian drafted the distribution agreements, and, as such, any ambiguity should be construed against Dalian. But an argument first raised in a reply brief is considered waived. *See Wonsey v. City of Chi.*, 940 F.3d 394, 398 (7th Cir. 2019) ("[A]rguments raised for the first time in a reply brief are waived."). In any event, the Counterclaim-Defendants support this argument by relying on evidence outside of the pleadings, which is prohibited at this stage. *See Matter of Wade*, 969 F.2d 241, 249 (7th Cir. 1992) ("The district court is confined to the pleadings when considering a motion to dismiss.").

U.S.C. § 101 (defining "work for hire" as "a work specially ordered or commissioned for use as a contribution to a collective work . . . if the parties expressly agree in a written instrument signed by them that the work shall be considered a work made for hire.")). But, as explained, it is not at all clear that the parties intended the distribution contract to provide that the English translations were works for hire. For these reasons, the motion to dismiss Count XII also is denied.

## IV.    Conclusion

For the above reasons, the Counter-Defendants' motion to dismiss Counts IV and XII is denied.

**IT IS SO ORDERED.**                    **ENTERED    3/6/20**

_____
**John Z. Lee**
**United States District Judge**