# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| HEALTH KING ENTERPRISE, INC., an Illinois corporation, XINGWU LIU, an individual, and JOANNE LIU f/k/a LINGJUAN LIU, an individual, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | 19 C 1878 |
| DALIAN HEALTH KING PRODUCTS CO., LTD., a Chinese Limited Company, HEALTH KING USA, INC., a California Corporation, and LIWEN SU, an individual, | ) ) ) ) ) ) ) | Judge John Z. Lee |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Health King Enterprise, Inc., ("Enterprise"), Xingwu Liu, and Joanne Liu have sued Dalian Health King Products Co., Ltd. ("Dalian"), Health King USA, and Liwen Su[1] for, among other things, trademark infringement and false designation of origin under the Lanham Act, 15 U.S.C. §§ 1051, 1125(a), and copyright infringement under the Copyright Act, 17 U.S.C. § 101 *et seq.* Defendants have answered the complaint and filed counterclaims for, among other things, trademark infringement, breach of contract, and a declaration that Dalian owns the copyrights at issue. Plaintiffs have moved for a preliminary injunction on these claims. For the reasons below, the motion is denied [22].

---

[1] Liwen Su has been dismissed by agreement.

## I. Factual Background

Dalian, which was originally founded under the name Mudanjiang Health King Industries, Inc., makes and sells Chinese herbal teas. Am. Compl. ¶ 30, ECF No. 32. Enterprise, owned by Xingwu Liu ("Xingwu") and Joanne Liu ("Joanne"), is a wholesaler and retailer of Chinese herbal remedies, including teas and dietary supplements. *Id.* ¶¶ 3–4, 16.

### A. "Health King" Trademark

For twenty-four years, Dalian and Enterprise were parties to three separate distribution agreements, whereby Dalian provided herbal teas, and Enterprise distribute them on an exclusive basis to customers in the United States using the "Health King Enterprise, Inc." name. *Id.*

The 1994 distribution agreement provided that "[Enterprise] assists [Dalian] in protection [of] its intellectual properties, including patents, trademarks, etc. [Dalian] allows [Enterprise] to use its marks (excluding any products not related to [Dalian's] products), [and] the ownership of the mark belongs to [Dalian] indefinitely." Defs.' Ex. 2, 1994 Agreement ¶ 3(10), ECF No. 53-3. The agreement also stated: "[Dalian] entrusts trademark application with [Enterprise], all the applications fees and costs shall be borne by [Dalian]." *Id.* ¶ 6.

Consistent with this agreement, Enterprise registered the Health King mark with the United States Patent and Trademark Office ("USPTO") on October 12, 1994.

The application listed Mudanjiang Health King Industries as the owner. *See* U.S. Reg. No. 2010762, accessible at http://www.uspto.gov (last visited Feb. 14, 2020).[2]

The parties also entered into a distribution agreement in 1999. That agreement specified: "During the cooperation, [Dalian] permits [Enterprise] to use the mark of HEALTH KING for promoting and selling HEALTH KING branded products. However, [Enterprise] shall not use it in association with any products unrelated to [Dalian]." Am. Compl., Ex. 6, 1999 Agreement ¶ 7, ECF No. 32-6.

The third distribution agreement was in 2002. It dictated: "During the term of collaboration, [Dalian] authorizes [Enterprise] the right to use Health King trademarks when promoting and selling Health King products, however Health King trademarks cannot be used on any other products that are unrelated to Health King." *Id.*, Ex. 15, 2002 Agreement ¶ 7, ECF No. 32-15. The 2002 Agreement had a term of eight years, renewable by consent of the parties. Am. Compl. ¶ 2.

After Mudanjiang Health King Industries changed its name to Dalian, Enterprise listed Dalian as the owner of the Health King trademark in its USPTO filing dated April 19, 2004. *See* U.S. Reg. No. 3127370, accessible at http://www.uspto.gov (last visited Feb. 14, 2020).

In 2010, Dalian and Enterprise agreed to renew the 2002 agreement. *See id.* ¶ 34. And, on October 22, 2018, the parties agreed to terminate it. *Id.* ¶ 37. Since

---

[2] A 1995 Memorandum of Understanding between Dalian and Enterprise "reiterate[d] their commitment based on the 1994, July 24 signed distribution agreement." Defs.' Ex. 3, 1995 Memorandum of Understanding, ECF No. 53-3.

3

then, Dalian has engaged another distributor, Health King USA, to replace Enterprise in the United States. Defs.' Answer ¶ 43, ECF No. 11.

Plaintiffs allege that, because Enterprise has used the Health King trademark to sell Dalian's Health King products for twenty-four years, it has the right to continue its use of the Health King trademark. *Id.* ¶¶ 81–83. Plaintiffs also claim that, even after the expiration of the 2002 distribution agreement, Dalian and Health King USA continued to sell herbal teas in boxes bearing the words "Distributed by Health King Enterprise, Inc., Chicago, IL 60616, USA (888) 838-8938 www.healthkingenterprise.com," except with a sticker covering them. *Id.* ¶ 45. As Plaintiffs see it, the continued use of the previously printed boxes creates the false impression that Enterprise is still associated with Dalian's products. Plaintiffs also assert, on information and belief, that some boxes are "hitting the retail shelves either without stickers, or with stickers that are not fully adhered, or not fully covering Health King Enterprise's name on the packaging." *See id.* ¶¶ 45–46 (internal quotation marks omitted).

For Defendants' part, they submit that, after the distribution agreement expired, Enterprise no longer had a right to use the Health King mark, and Enterprise's continued use infringes Dalian's registered trademark. Am. Countercls. ¶¶ 221, 252. Also, Defendants contend that, because the label covering Enterprise's information is affixed before each box is individually shrink-wrapped in plastic, there is no chance that a box of Dalian's herbal teas could be sold to an end consumer with Enterprise's name visible on the box. Defs.' Ex., Giuchun Su Decl. ("Su Decl.") ¶ 42,

ECF No. 53-1; *see* Pl.'s Suppl. Ex. B, J. Liu Decl. ("Liu Decl") ¶ 9 (stating that, after the distribution agreement ended, Enterprise called one of its distributors and directed her to find a Dalian product box with a sticker, after which she proceeded to peel the sticker off).

**B.    Copyrights in Health King Product Names & Description Translations**

Dalian has sold its products in China in packaging featuring names and descriptions written in the Chinese language since 1994. Am. Countercls. ¶ 171, ECF No. 11. To promote its products in North America, Dalian provided these names and descriptions to Enterprise's owners, Xingwu Liu and Joanne Liu, so that they could translate them into English. *Id.* ¶ 172; Su Decl. ¶¶ 17–18, 20; Defs.' Exs. 5, 7, 8, Chinese Product Descriptions, ECF Nos. 53-6, 53-8, 53-9; Am. Compl. ¶ 3.[3]

Joanne told Dalian that, to best promote the products in North America, the descriptions had to reflect American perspectives and comply with laws that applied to health claims. Defs.' Ex. 1, 3/29/94 Letter from J. Liu to G. Su ¶ 3, ECF No. 53-2. Joanne also commented on the Chinese descriptions themselves, stating, "Some of them don't make much sense, and bear some grammar [sic] mistakes." *Id.* ¶ 4. In exchange for Enterprise's translating services, Dalian agreed to provide a lower price on its products and prioritize Enterprise's orders. Defs.' Ex. 6, 6/27/97 Letter from X. Liu to G. Su ¶ 4, ECF No. 53-7.

---

[3]     For an undetermined period of time, Xingwu was also employed as first vice-manager of Mudanjiang Health King. Defs.' Ex. 3, 1994 Agreement ¶¶ 2, 3(5).

5

Enterprise's role in translating the product descriptions is reflected in the distribution agreements. The 1994 Agreement states: "[Enterprise] voluntarily participates in packaging design for certain products, not involving compensation." Defs.' Ex. 2, 1994 Agreement ¶ 3(9). It also provides: "[Enterprise] assists [Dalian] in protection [of] its intellectual properties, including patents, trademarks, etc." *Id.* ¶ 3(10). Under the 1999 and 2002 distribution agreements, the parties agreed that "[t]he relationship between [Dalian] and [Enterprise] is business/trade, [Enterprise] previously translated English labels for [Dalian], there exist no intellectual property problems." Am. Countercls., Ex. A, 1999 Agreement ¶ 7; *id.*, Ex. B, 2002 Agreement ¶ 9.

Based upon these facts, Plaintiffs contend that Xingwu and Joanne, as co-authors of the English translations, own the copyrights in the translations that they registered with the United States Copyright Office. Am. Compl. ¶¶ 20–24; *id.*, Exs. 2–4, Certificates of Registration, ECF Nos. 32-2, 32-3, 32-4. From this, Plaintiffs claim that Dalian's continued use of the translations, without their permission, infringes these copyrights.

On the other hand, Defendants argue that the parties had an agreement that Dalian owned the copyrights to the translations as works for hire, that Plaintiffs would protect Dalian's copyrights, and that Plaintiffs agreed not to dispute Dalian's ownership. Am. Countercls. ¶¶ 243–47. In Defendants' view, the registered copyrights are invalid because they were based on fraudulent misrepresentations the Lius made to the USPTO. *Id.* ¶¶ 272–76.

## II.     Legal Standard

"[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (internal quotation marks omitted). A party seeking a preliminary injunction must show that (1) its case has "some likelihood of success on the merits," (2) it has "no adequate remedy at law", and (3) "without relief it will suffer irreparable harm."[4] *Planned Parenthood of Ind. & Ky., Inc. v. Comm'r of Ind. State Dep't of Health*, 896 F.3d 809, 816 (7th Cir. 2018). As part of the preliminary-injunction analysis, a district court may consider a nonmovant's defenses in determining the movant's likelihood of success on the merits. *See Russian Media Grp., LLC v. Cable Am., Inc.*, 598 F.3d 302, 308 (7th Cir. 2010).

If the moving party meets these threshold requirements, the district court "weighs the factors against one another, assessing whether the balance of harms favors the moving party or whether the harm to the nonmoving party or the public is sufficiently weighty that the injunction should be denied." *Ezell v. City of Chi.*, 651 F.3d 684, 694 (7th Cir. 2011). "This process involves engaging in what we term the sliding scale approach; the more likely the plaintiff will succeed on the merits, the

---

[4]     *In Flava Works, Inc. v. Gunter*, 689 F.3d 754, 755 (7th Cir. 2012), the Seventh Circuit held that, under *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 392–93 (2006), irreparable harm is no longer presumed in copyright infringement cases. Although the Seventh Circuit has not yet had an opportunity to address whether *eBay*'s holding applies in trademark infringement cases, the Plaintiffs have not argued, and the Court does not find, any basis for differentiation. *See Ferring Pharm., Inc. v. Watson Pharm., Inc.*, 765 F.3d 205, 216 (3d Cir. 2014) (extending *eBay* analysis to a trademark infringement claim); *Herb Reed Enters., LLC v. Fla. Entm't Mgmt., Inc.,* 736 F.3d 1239, 1242 (9th Cir. 2013) (same).

less the balance of irreparable harms need favor the plaintiff's position." *Ty, Inc. v. Jones Grp., Inc.*, 237 F.3d 891, 895 (7th Cir. 2001).

> **A.    Trademark Infringement**

To prove trademark infringement, a plaintiff "must establish that it owns a protectable mark and that defendants' use of the mark was likely to cause confusion among consumers as to the origin of defendants' product." *Starsurgical Inc. v. Aperta, LLC*, 40 F. Supp. 3d 1069, 1079 (E.D. Wis. 2014) (citing *Ty, Inc.*, 237 F.3d at 898). "Trademark law protects the source-denoting function of words used in conjunction with goods and services in the marketplace, not the words themselves." *Fortres Grand Corp. v. Warner Bros. Entm't Inc.*, 763 F.3d 696, 705–06 (7th Cir. 2014). "[T]he test is . . . whether the viewer of an accused mark would be likely to associate the product or service with which it is connected with the source of products or services with which an earlier mark is connected." *James Burrough Ltd. v. Sign of Beefeater*, Inc., 540 F.2d 266, 275 (7th Cir. 1976).

A certificate of trademark registration creates a rebuttable presumption of use as of the filing date. *Zazu Designs v. L'Oreal, S.A.*, 979 F.2d 499, 504 (7th Cir. 1992). But "a trademark application is always subject to previously established common law trademark rights of another party." *S.C. Johnson & Son, Inc. v. Nutraceutical Corp.*, 835 F.3d 660, 665 (7th Cir. 2016) (internal quotation marks omitted). "The party who first appropriates the mark through use, and for whom the mark serves as a designation of source, acquires superior rights to it." *Johnny Blastoff, Inc. v. L.A. Rams Football Co.*, 188 F.3d 427, 434–35 (7th Cir. 1999).

8

Based on the record, Plaintiffs have not shown a likelihood that they will prevail in establishing that Enterprise's rights to the Health King mark are superior to Dalian's. First, Dalian's predecessor, Mudanjiang Health King, was listed as the registered owner of the Health King mark as of October 12, 1994. *See* U.S. Reg. No. 2010762. In addition, the record shows that Mudanjiang Health King used the mark when it sold two kinds of herbal products to Xingwu and Joanne in 1994, Su Decl. ¶¶ 2, 6, and Xingwu and Joanne, in turn, sold those products in Xingwu's Panda Gift Shop. *Id.*; Defs.' Ex. 1, 3/12/94 Letter from J. Liu to G. Su at 3. Furthermore, Mudanjiang Health King manufactured and shipped products bearing the Health King mark to Xingwu and Joanne for sale in 1994, before they formed Enterprise in 1995. *Compare* Defs.' Ex. 2, 1994 Agreement, *with* Pl.'s Exs. Supp. Preliminary Injunction, Ex. A, Xingwu Decl. ¶ 11, ECF No. 23-1.

The distribution agreements governing Dalian and Enterprise's relationship provide additional evidence of Dalian's superior rights to the mark. For example, the 1994 agreement states that "the ownership of the mark belongs to [Dalian] indefinitely." *Id.* ¶ 3(10). Likewise, the 1994, 1999, and 2002 agreements prohibited Enterprise from using the mark in association with products unrelated to Dalian. *Id.*; Am. Compl., Ex. 6, 1999 Agreement ¶ 7; *id.*, Ex. 15, 2002 Agreement ¶ 7. Xingwu even admitted that, if Enterprise were to use "Health King" in the context of Enterprise's own products, it would constitute infringement. Defs.' Ex. 6, 6/27/97

9

Letter from X. Liu to G. Sun at 1 ,ECF No. 53-7.[5]  The logical conclusion from this evidence is that Dalian merely granted Enterprise a license to use "Health King" in Enterprise's corporate name to sell Dalian products, while Enterprise was Dalian's exclusive distributor in the United States.

Notably, Plaintiffs have provided no facts to show that Enterprise was the first to use the mark in commerce.  Rather, they rely on the assertion that Enterprise has been using the mark for over twenty-four years and has gone to substantial lengths to promote the Health King mark while it was the exclusive distributor of Health King products.  That may be true, but those facts are insufficient to establish that Enterprise acquired superior rights to the mark.  Accordingly, based on this record, the Court finds that Plaintiffs have not met their burden to show even a negligible chance of success on the merits with respect to their trademark infringement claim.

Nor have Plaintiffs shown they will suffer irreparable harm if their request for an injunction is denied.  Significantly, they have not explained how any confusion would compromise Enterprise's rights to the Health King mark, given that the record indicates that it is Dalian that holds superior rights.  And any confusion arising from Enterprise's continued use of the Health King mark to sell products unrelated to Dalian after the termination of the 2002 agreement would seem to be self-inflicted. *See, e.g.,* Liu Decl. ¶ 8.  In any event, Dalian has established that any pre-sale

---

[5]  *But see* Am. Compl., Ex. 4, 11/2/18 Copyright (showing that, after the distribution agreement ended, Xingwu and Joanne applied for and obtained copyrights in forty-three product descriptions for use on packaging that each state: "What makes Health King Teas Special?").

10

confusion effectively was eliminated by overlaying shrink wrap on the boxes displaying stickers that concealed Enterprise's information and featured the new U.S. distributor's information. *See* Su Decl. ¶ 42. As for post-sale confusion, the only evidence Enterprise offers is one customer who pulled off the sticker after being prompted by Enterprise's General Manager James Liu to find a box with a sticker; this is woefully insufficient to satisfy Enterprise's burden of proof. *See* Liu Decl. ¶ 9.

Lastly, as a corollary, the balance of the hardships does not weigh in Plaintiffs' favor due to Dalian's likely superior rights to the mark. For these reasons, Plaintiff's motion for a preliminary injunction as to its trademark claim is denied.

### B. Copyright Infringement

Plaintiffs allege that Defendants have infringed their copyrights in the English translations of Dalian's product names and descriptions. A plaintiff asserting copyright infringement must prove: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991).

"A certificate of registration from the U.S. Register of Copyrights constitutes *prima facie* evidence of the validity of a copyright." *Wildlife Exp. Corp. v. Carol Wright Sales, Inc.*, 18 F.3d 502, 507 (7th Cir. 1994) (citing 17 U.S.C. § 410(c)). This is a rebuttable presumption, however, and the burden of proof regarding ownership remains with the plaintiff. *Mid Am. Title Co. v. Kirk*, 59 F.3d 719, 721 (7th Cir. 1995).

The accused party may rebut the presumption by showing that it owns the copyright based on the work-for-hire doctrine. *See, e.g., Urbont v. Sony Music Entm't,*

831 F.3d 80, 93 n.12 (2d Cir. 2016). "In the case of a work made for hire, the employer or other person for whom the work was prepared is considered the author for purposes of this title, and, unless the parties have expressly agreed otherwise in a written instrument signed by them, owns all of the rights comprised in the copyright." 17 U.S.C. § 201(b); *see id.* § 101 (including "translation" in the definition of a "work made for hire").

The parties hotly contest whether the translations were works made for hire under their distribution agreements. As discussed in an earlier order, the language in the agreements is ambiguous as to whether the translations were works for hire. 3/6/20 Mem. Op. & Order at 6, ECF No. 81. Because both sides present plausible arguments as to who owns the copyrights, Plaintiffs have shown at least some likelihood of success on the merits.

Plaintiffs' request for injunctive relief, however, falters on two additional elements necessary for the issuance of a preliminary injunction. They have failed to show the absence of an adequate remedy at law and that they would suffer irreparable harm in the event in the absence of an injunction.

In support, Plaintiffs point out that Dalian is using their English translations to compete in a market that they, as Dalian's previous distributor, had built with their hard work. In addition, Plaintiffs contend that they have lost control over how consumers view the translations. But a statement made by Xingwu in a letter to Dalian after the expiration of the 2002 distribution agreement substantially undercuts Plaintiffs' position.

12

In it, Xingwu warned: "Either you pay us [a] royalty, or you can design your own packaging and labels." Defs.' Ex. 15, 1/8/19 Letter from X. Liu to G. Su at 1, ECF No. 53-16. Given that Plaintiffs have admitted they would be willing to allow Dalian to use the translated names and descriptions if Dalian paid a fee, Plaintiffs have not established the absence of an adequate legal remedy or the likelihood of irreparable harm. *See, e.g., Marine Travelift, Inc. v. ASCOM SpA*, No. 14-C-443, 2014 WL 4215925, at *18 (E.D. Wis. Aug. 25, 2014) ("This does not mean Ford is out of luck and that Chrysler may escape scotfree; it merely means that Ford cannot show irreparable harm to obtain preliminary injunctive relief. It may receive royalties from Chrysler's sales . . . .").

In short, because Plaintiffs have not shown an inadequate remedy at law or irreparable harm, they have not satisfied the threshold requirements for a preliminary injunction or that the balancing of harms weighs in their favor. Accordingly, Plaintiffs' motion for a preliminary injunction as to the copyright infringement claim also is denied.

### IV. Conclusion

For the above reasons, Plaintiffs' motion for a preliminary injunction is denied.

**IT IS SO ORDERED.**     **ENTERED 3/12/20**

*[signature: John Z. Lee]*

_____
**John Z. Lee**
**United States District Judge**